United States District Court

For the Northern District of California

1

2

3    UNITED STATES DISTRICT COURT

4    NORTHERN DISTRICT OF CALIFORNIA

5    OAKLAND DIVISION

6

7    MICHAEL JOHN GADDY,

8              Plaintiff,                          No. C 11-5568 PJH (PR)

9         v.                                       **ORDER GRANTING**
                                                   **DEFENDANTS' MOTION FOR**
10   Warden A. SOLIS, et. al.,                     **SUMMARY JUDGMENT**

11             Defendants.

12   _____/

13        This is a civil rights case brought pro se by a state prisoner.  The case proceeds on

14   the amended complaint against defendants Sherman, Wells, Guerra, Tran and Gutierrez

15   for excessive force and retaliation and defendant Reamer for retaliation.  Defendants have

16   moved for summary judgment.  Plaintiff has filed an opposition and defendants filed a

17   reply.[1]  For the reasons set forth below the motion for summary judgment will be granted.

18                                    **DISCUSSION**

19   **I.    Motion for Summary Judgment**

20        **A.    Standard of Review**

21        Summary judgment is proper where the pleadings, discovery and affidavits show

22   that there is "no genuine dispute as to any material fact and the movant is entitled to

23   judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may

24   affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

25   A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury

26   to return a verdict for the nonmoving party. *Id.*

27   _____

28        [1] Plaintiff was provided notice by defendants at the time of filing this motion of how to
     oppose summary judgment, pursuant to *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir.
     1998) (en banc).  Docket No. 42.

United States District Court

For the Northern District of California

1    The moving party for summary judgment bears the initial burden of identifying those

2    portions of the pleadings, discovery and affidavits which demonstrate the absence of a

3    genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan*

4    *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the moving

5    party has met this burden of production, the nonmoving party must go beyond the

6    pleadings and, by its own affidavits or discovery, set forth specific facts showing that there

7    is a genuine issue for trial.  If the nonmoving party fails to produce enough evidence to

8    show a genuine issue of material fact, the moving party wins.  *Id.*

9    **B.    Facts**

10   **i.    Excessive Force**

11   Plaintiff alleges that on December 27, 2010, Sherman, Wells, Guerra, Tran and

12   Gutierrez used excessive force against him during a cell extraction of him and his cellmate.

13   Opposition at 3.  Plaintiff alleges that he attempted to comply with defendants' orders and

14   allow himself to be handcuffed but without warning defendants used a barricade removal

15   device to push plaintiff and then used a pepper spray grenade against plaintiff, which

16   bounced in the cell and hit plaintiff in the mouth, cracking his tooth.  *Id.*  Defendants'

17   version of the events significantly differ from plaintiff's facts.  In support of this motion

18   defendants have provided two videos of the cell extraction.  Motion for Summary Judgment

19   ("MSJ"), Decl. Whitley, Exh. A.[2]  Plaintiff has viewed the videos.  Decl. Majiorino, Exh. B.

20   The videos entirely support defendants' factual assertions and contradict plaintiff's

21   complaint and opposition to summary judgment.  It will be described below.

22   The following facts are undisputed except where indicated otherwise.  Plaintiff and

23   his cellmate were housed in an Administrative Segregation Housing unit on December 27,

24   2010.  Decl. Sherman ¶ 3.  At various times during December 27, 2010, the windows to

25   plaintiff's cell were covered so guards could not view the inside of the cell.  *Id.* ¶ 6.  Guards

26

27   _____

     [2] The videos were filmed with two different cameras and then after plaintiff and his
28   cellmate were removed from the cell, one camera followed each individual.  Plaintiff is the
     inmate with the shaved head and the subject of the video recording by Officer Whitley,
     Team No. 2.

United States District Court
For the Northern District of California

need to view the inside of cells for the safety and security of the prison, so prisoners do not

attempt to manufacture weapons, conceal contraband or physically assault one another.

*Id.*  At approximately 4:30 pm, plaintiff's cell windows were covered with papers and when

ordered to remove them he refused to comply.  Decl. Majiorino, Exh. A at 53.  At the time of

the cell extraction, approximately 11:22 pm, the windows to plaintiff's cell were not

covered.[3]  Defendants were authorized by their supervisor to remove the items from the cell

that had been used to cover the windows.  Decl. Sherman ¶ 8.  Prison staff covered the

windows of nearby inmates' cells to prevent these inmates from observing the cell

extraction and manipulating inmates or staff with their observations.  Decl. Tran ¶ 8.

        The court will briefly describe the content of the videos.  Defendants approached the

cell and requested that plaintiff and his cellmate comply with orders and come out of their

cell.  When they did not answer, they were told that force would be used and pepper

spray.[4]  They were informed that if they intended to barricade themselves, a barricade

removal device would be used.  They were repeatedly given the opportunity to voluntarily

be handcuffed and exit the cell, but declined.  At one point it appeared that plaintiff and his

cellmate were going to comply with the orders to be handcuffed and exit the cell, but they

chose not to.  The guards opened up the small food try slot to drop the pepper spray

grenade and plaintiff and his cellmate actively attempted with their hands to stop the

guards' actions and not allow the pepper spray grenade to be put in the cell.[5]  After two

pepper spray grenades were activated, plaintiff and his cellmate complied with the

defendants' orders and allowed themselves to be handcuffed without incident or any force

---

        [3] Plaintiff does not specifically deny that his windows were covered earlier.  Plaintiff
states that while some guards reported the windows covered, not all the guards did at
different shifts.  Though, defendants state that the windows were covered only at various
times during the day.

        [4] A guard read warnings from a pre-printed sheet.

        [5] Plaintiff states he put his hands out to be handcuffed, not to stop the pepper spray
grenade from being placed in the cell.  Opposition at 4.  This statement is contradicted by
the video which demonstrates that plaintiff did not agree to be handcuffed in the beginning
and was obviously attempting to stop the defendants from placing the pepper spray
grenade in the cell.

United States District Court
For the Northern District of California

being required.

Plaintiff was immediately escorted to another area where he was provided water and an opportunity to shower and decontaminate from the pepper spray. Plaintiff does not appear in any type of distress from the pepper spray. He was briefly looked over by a nurse and asked some questions. Plaintiff stated he did not want to be decontaminated and only needed a drink of water. Plaintiff makes no reference to a chipped tooth or any other injuries.

### ii.    Retaliation

Defendant Reamer was assigned to the Administrative Segregation Property Room during the relevant time. Decl. Reamer ¶ 3. Property restrictions are placed on inmates in Administrative Segregation. *Id.* Property not kept in an inmate's cell must be stored in the property room. On January 10, 2011, defendant Reamer completed a confiscated item receipt for plaintiff's television because it had been improperly altered. *Id.* ¶ 4.[6] A hole had been cut in the television's housing and covered with tape. *Id.* Prison regulations allow prisoners to possess certain appliances as long as the appliances are sealed. *Id.* The regulations prevent inmates from using internal parts to manufacture weapons or conceal contraband. *Id.*

Plaintiff alleges that on January 10, 2011, defendants Guerra, Tran and Gutierrez searched his cell and several inmate witness declarations regarding the December 27, 2010, cell extraction were removed. Am. Compl. at 5; Oppositon at 18-19. However, plaintiff included several inmate witness declarations with his amended complaint that were signed and dated prior to January 10, 2011. Am. Compl. at 10-13.[7] Plaintiff also submitted a grievance regarding the cell extraction on January 8, 2011, that was processed on

---

[6] It does not appear that the television was removed from plaintiff's cell, rather it was already being stored in the property room.

[7] Two of the declarations state that plaintiff and his cellmate appeared as they had been badly beaten during the incident. Am. Compl. at 12-13. These declarations are contradicted by the video of the cell extraction and the aftermath where plaintiff and his cellmate appear uninjured.

4

United States District Court

For the Northern District of California

1    January 12, 2011.  *Id.* at 28.

2    **C.    Analysis**

3          **i.    Excessive Force Standard**

4          The treatment a prisoner receives in prison and the conditions under which he is

5    confined are subject to scrutiny under the Eighth Amendment.  *Helling v. McKinney*, 509

6    U.S. 25, 31 (1993).  "After incarceration, only the unnecessary and wanton infliction of pain

7    . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."

8    *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and

9    citation omitted).  A prison official violates the Eighth Amendment when two requirements

10   are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer v.*

11   *Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and

12   (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending

13   conduct was wanton, *id.* (citing *Wilson*, 501 U.S. at 297); *LeMaire v. Maass*, 12 F.3d 1444,

14   1451 (9th Cir. 1993).

15         What is required to establish an unnecessary and wanton infliction of pain varies

16   according to the nature of the alleged constitutional violation.  *Whitley v. Albers*, 475 U.S.

17   312, 320 (1986).  When prison officials stand accused of using excessive force in violation

18   of the Eighth Amendment, the deliberate indifference standard is inappropriate.  *Hudson v.*

19   *McMillian*, 503 U.S. 1, 6 (1992).  Instead, the core judicial inquiry is whether force was

20   applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically

21   to cause harm.  *Id.* at 6-7; *Whitley*, 475 U.S. at 320-21; *Jeffers v. Gomez*, 267 F.3d 895,

22   912-13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison

23   guards used excessive force when attempting to quell a prison riot, but applying "deliberate

24   indifference" standard to claim that guards failed to act on rumors of violence to prevent the

25   riot).

26         In determining whether the use of force was for the purpose of maintaining or

27   restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may

28   evaluate the need for application of force, the relationship between that need and the

5

**United States District Court**
For the Northern District of California

1    amount of force used, the extent of any injury inflicted, the threat reasonably perceived by

2    the responsible officials, and any efforts made to temper the severity of a forceful response.

3    *Hudson*, 503 U.S. at 7; *LeMaire*, 12 F.3d at 1454.

4    　　　　A significant injury is not a threshold requirement for stating an excessive force

5    claim. *Hudson*, 503 U.S. at 7. Whether the alleged wrongdoing is objectively harmful

6    enough to establish a constitutional violation is contextual and responsive to contemporary

7    standards of decency. *Id.* at 8 (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). This is

8    not to say that the "absence of serious injury" is not relevant to the Eighth Amendment

9    inquiry. *Hudson*, 503 U.S. at 7. The extent of injury suffered by an inmate is one factor

10   that may suggest whether the use of force could possibly have been thought necessary in a

11   particular situation. *Id.* The extent of injury may also provide some indication of the

12   amount of force applied. *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010). But not every

13   malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503

14   U.S. at 9. The Eighth Amendment's prohibition of cruel and unusual punishment

15   necessarily excludes from constitutional recognition de minimis uses of physical force,

16   provided that the use of force is not of a sort repugnant to the conscience of mankind. *Id.*

17   An inmate who complains of a push or shove that causes no discernable injury almost

18   certainly fails to state a valid excessive force claim. *Id.*

19   　　　　　　　　　　　　**a.    Discussion**

20   　　　　After reviewing the parties' briefing and the videos of the cell extraction it is evident

21   there was no Eighth Amendment violation. There is no evidence that defendants used

22   force maliciously and sadistically to cause harm and plaintiff was not complying with

23   instructions and had previously been noncompliant with prison rules. It is undisputed that

24   plaintiff was given several opportunities to be handcuffed and peacefully leave his cell.

25   Plaintiff refused to cooperate. Plaintiff was told that if he did not cooperate force would be

26   used including pepper spray. Plaintiff still did not cooperate. After plaintiff was informed of

27   what would occur, the slot to his cell was open and pepper spray grenades were thrown

28   into the cell. Despite plaintiff's statements to the contrary, it is abundantly clear that plaintiff

United States District Court

For the Northern District of California

1    was not cooperating and allowing himself to be handcuffed rather he was trying to block the

2    pepper spray grenades from being placed in his cell.  The force used by defendants was

3    rather small and mostly involved the use of pepper spray and the barricade remover when

4    plaintiff and his cellmate attempted to obstruct defendants.

5         Plaintiff only suffered minor injuries, while not determinative this further

6    demonstrates the lack of an Eighth Amendment violation especially in light of the minor

7    force used and the many opportunities plaintiff was provided to comply with orders.  Plaintiff

8    was provided an opportunity to decontaminate from the pepper spray but declined.  Plaintiff

9    alleges that one of the grenades bounced off the ground and hit him in the mouth injuring

10   his tooth.  This allegation cannot be definitively supported or refuted by the video

11   recordings.  Even assuming it was true, plaintiff does not mention his tooth after the

12   extraction while being looked over by a nurse and provided water.  If a pepper grenade did

13   bounce off the floor and hit him in the mouth, it was not malicious and sadistic but rather an

14   accident and not a constitutional violation.  The video shows the pepper grenades were

15   thrown on the ground and not intentionally at plaintiff's face.

16        Plaintiff's attempt to show a genuine issue of material fact by stating that the video

17   shows he was complying with defendants' commands also fails as this assertion is clearly

18   refuted by the video evidence.  "When opposing parties tell two different stories, one of

19   which is blatantly contradicted by the record, so that no reasonable jury could believe it, a

20   court should not adopt that version of the facts for purposes of ruling on a motion for

21   summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (police officer entitled to

22   summary judgment based on qualified immunity in light of video evidence capturing

23   plaintiff's reckless driving in attempting to evade capture which utterly discredits plaintiff's

24   claim that there was little or no actual threat to innocent bystanders).

25        Plaintiff also argues that because defendants covered the outside windows of

26   nearby cells during the extraction, summary judgment should be denied as this undermines

27   defendants' argument that the inside of cells need to be visible.  It is undisputed that the

28   other windows were covered so nearby inmates could not observe the cell extraction and

United States District Court

For the Northern District of California

1    manipulate inmates or staff with their observations.  There is no indication that the

2    coverings were permanent rather it was just one or two cells and it appeared to be paper

3    taped on the window.  As described above, other inmates whose windows were not

4    covered submitted declarations about the incident that are contradicted by the video

5    evidence.

6          While plaintiff's prior refusal to follow prison rules was not a severe threat, it is

7    reasonable for prison officials to need to be able to see inside a cell for both cellmates

8    safety as well as the safety of prison staff.  Defendants were justified in needing to enter

9    the cell to remove the papers being used to block the windows.  With their response

10   defendants used only a small amount of force to maintain discipline, there was only a minor

11   injury and defendants made numerous efforts to temper the severity of their response, but

12   plaintiff refused to cooperate and actively tried to disrupt defendants.  For all these reasons

13   plaintiff has not shown the deprivation of an actual constitutional right.

14                    **ii.    Retaliation Standard**

15         "Within the prison context, a viable claim of First Amendment retaliation entails five

16   basic elements:  (1) An assertion that a state actor took some adverse action against an

17   inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled

18   the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

19   advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th

20   Cir. 2005) (footnote omitted).

21         A prisoner must at least allege that he suffered harm, since harm that is more than

22   minimal will almost always have a chilling effect.  *Rhodes*, 408 F.3d at 567-68 n.11;

23   *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) (holding that a retaliation claim is not

24   actionable unless there is an allegation of harm).  The prisoner need not demonstrate a

25   total chilling of his First Amendment rights in order to establish a retaliation claim.  *See*

26   *Rhodes*, 408 F.3d at 568-69.  That a prisoner's First Amendment rights were chilled, though

27   not necessarily silenced, is enough.  *Id.* at 569.

28         The prisoner must show that the type of activity he was engaged in was

                                    8

United States District Court

For the Northern District of California

1   constitutionally protected, that the protected conduct was a substantial or motivating factor

2   for the alleged retaliatory action, and that the retaliatory action advanced no legitimate

3   penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997).   Retaliatory

4   motive may be shown by the timing of the allegedly-retaliatory act and inconsistency with

5   previous actions, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th

6   Cir. 2003).

7         Retaliation claims brought by prisoners must be evaluated in light of concerns over

8   "excessive judicial involvement in day-to-day prison management, which 'often squander[s]

9   judicial resources with little offsetting benefit to anyone.'"  *Pratt v. Rowland*, 65 F.3d 802,

10  807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).  In particular,

11  courts should "'afford appropriate deference and flexibility' to prison officials in the

12  evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."

13  *Id.* (quoting *Sandin*, 515 U.S. at 482).

14                  **a.**    **Discussion**

15        The only allegations against defendant Reamer are that a couple of weeks after the

16  cell extraction plaintiff's television that had been stored in the property room was

17  confiscated because it had been altered.  There are no allegations that Reamer's actions

18  were somehow connected to the cell extraction or she was even aware of the incident or an

19  inmate appeal following the incident.  Plaintiff alleges that Reamer stated that she heard

20  plaintiff likes to write up correctional officers.  Yet, plaintiff's inmate appeal regarding the

21  cell extraction was received by prison officials on January 12, 2011, while the television

22  was confiscated two days earlier on January 10, 2011.  Am. Compl. at 28.  Plaintiff has

23  failed to show any casual connection between the two events.  Plaintiff states that he filed

24  an inmate appeal after the television was confiscated which demonstrates retaliation.  This

25  argument fails as the television was confiscated before plaintiff filed the appeal.  Plaintiff's

26  conclusion that Reamer's actions were retaliatory are insufficient. *See Leer v. Murphy*, 844

27  F.2d 628, 634 (9th Cir. 1988) (conclusory allegations insufficient to defeat summary

28  judgment).  Of course not permitting an inmate to have an appliance that could hide

United States District Court

For the Northern District of California

1  contraband or have a part that could be used to make a weapon reasonably advances a

2  legitimate correctional goal and plaintiff has failed to show the confiscation of the television

3  was due to any protected conduct.

4      Plaintiff alleges that on January 10, 2011, defendants Guerra, Tran and Gutierrez

5  searched his cell and several inmate witness declarations regarding the cell extraction were

6  removed.  Plaintiff argues this was in retaliation for filing an inmate appeal.  As noted

7  above, plaintiff's appeal regarding the cell extraction was not received by prison officials

8  until January 12, 2011, so it does not appear defendants were aware of the appeal.  Even if

9  they were aware of the appeal and removed the declarations, plaintiff already had an

10  opportunity to submit the declarations as he wrote the appeal on January 8, 2011.  Am.

11  Compl. at 28.  Plaintiff also included several inmates witness declarations with his amended

12  complaint to this court that were signed and dated prior to January 10, 2011, so there does

13  not appear to be any harm that can support retaliation.  Plaintiff states that while he

14  submitted some witness declarations, he was not able to include others, but plaintiff does

15  not provide any information about these other declarations.  Opposition at 19.  It is not clear

16  how the witness declarations could have been helpful to plaintiff and how their absence

17  harmed his case.  No one was able to witness the extraction as it occurred in the cell away

18  from their view and the declarations that were provided describe visible injuries to plaintiff

19  that are contradicted by the video evidence of the incident.

20      Plaintiff also alleges that the cell extraction was in retaliation because he complained

21  about the lack of showers earlier in the day.  This conclusory allegation with no other

22  support is insufficient to overcome defendants' motion for summary judgment and the great

23  deal of evidence regarding plaintiff covering his cell windows.  Nor does plaintiff describe

24  any protected conduct.  Plaintiff has failed to show that any defendants retaliated against

25  him.

26      **D.    Qualified Immunity**

27      The defense of qualified immunity protects "government officials . . . from liability for

28  civil damages insofar as their conduct does not violate clearly established statutory or

10

United States District Court
For the Northern District of California

1  constitutional rights of which a reasonable person would have known." *Harlow v.*
2  *Fitzgerald*, 457 U.S. 800, 818 (1982).  A court considering a claim of qualified immunity
3  must determine (1) whether the plaintiff has alleged the deprivation of an actual
4  constitutional right and (2) whether such right was clearly established such that it would be
5  clear to a reasonable officer that his conduct was unlawful in the situation he confronted.
6  *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009) (overruling requirement in *Saucier v.*
7  *Katz*, 533 U.S. 194 (2001), that court ruling on qualified immunity claim consider first prong
8  of test before addressing second prong).  The court may exercise its discretion in deciding
9  which prong to address first.  *Id.*

10      As set forth above, plaintiff has failed to demonstrate the deprivation of an actual
11  constitutional right for any of his claims.  With respect to the excessive force claim,
12  defendants used a minor amount of force after repeatedly providing plaintiff an opportunity
13  to comply with their orders and there was only a minor injury.  Plaintiff has also failed to
14  show that any defendants took adverse action against him because of protected conduct.
15  Therefore, defendants are entitled to qualified immunity.

**CONCLUSION**

16
17      1.  The motion for summary judgment (Docket No. 31) is **GRANTED**.
18      2.  The clerk shall close the file.
19      **IT IS SO ORDERED.**
20  Dated: September 16, 2013.  _____
21                                          PHYLLIS J. HAMILTON
                                            United States District Judge
22
23  G:\PRO-SE\PJH\CR.11\Gaddy5568.msj.wpd

11