UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

MICHAEL JOHN GADDY,

    Plaintiff,

v.

Warden A. SOLIS, et. al.,

    Defendants.

No. C 11-5568 PJH (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is a civil rights case brought pro se by a state prisoner. The case proceeds on the amended complaint against defendants Sherman, Wells, Guerra, Tran and Gutierrez for excessive force and retaliation and defendant Reamer for retaliation. Defendants have moved for summary judgment. Plaintiff has filed an opposition and defendants filed a reply.[1] For the reasons set forth below the motion for summary judgment will be granted.

**DISCUSSION**

**I.    Motion for Summary Judgment**

    **A.    Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

---

[1] Plaintiff was provided notice by defendants at the time of filing this motion of how to oppose summary judgment, pursuant to *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc). Docket No. 42.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

**B.    Facts**

    **i.    Excessive Force**

Plaintiff alleges that on December 27, 2010, Sherman, Wells, Guerra, Tran and Gutierrez used excessive force against him during a cell extraction of him and his cellmate. Opposition at 3. Plaintiff alleges that he attempted to comply with defendants' orders and allow himself to be handcuffed but without warning defendants used a barricade removal device to push plaintiff and then used a pepper spray grenade against plaintiff, which bounced in the cell and hit plaintiff in the mouth, cracking his tooth. *Id.* Defendants' version of the events significantly differ from plaintiff's facts. In support of this motion defendants have provided two videos of the cell extraction. Motion for Summary Judgment ("MSJ"), Decl. Whitley, Exh. A.[2] Plaintiff has viewed the videos. Decl. Majiorino, Exh. B. The videos entirely support defendants' factual assertions and contradict plaintiff's complaint and opposition to summary judgment. It will be described below.

The following facts are undisputed except where indicated otherwise. Plaintiff and his cellmate were housed in an Administrative Segregation Housing unit on December 27, 2010. Decl. Sherman ¶ 3. At various times during December 27, 2010, the windows to plaintiff's cell were covered so guards could not view the inside of the cell. *Id.* ¶ 6. Guards

---

[2] The videos were filmed with two different cameras and then after plaintiff and his cellmate were removed from the cell, one camera followed each individual. Plaintiff is the inmate with the shaved head and the subject of the video recording by Officer Whitley, Team No. 2.

2

need to view the inside of cells for the safety and security of the prison, so prisoners do not attempt to manufacture weapons, conceal contraband or physically assault one another. *Id*. At approximately 4:30 pm, plaintiff's cell windows were covered with papers and when ordered to remove them he refused to comply. Decl. Majiorino, Exh. A at 53. At the time of the cell extraction, approximately 11:22 pm, the windows to plaintiff's cell were not covered.[3] Defendants were authorized by their supervisor to remove the items from the cell that had been used to cover the windows. Decl. Sherman ¶ 8. Prison staff covered the windows of nearby inmates' cells to prevent these inmates from observing the cell extraction and manipulating inmates or staff with their observations. Decl. Tran ¶ 8.

The court will briefly describe the content of the videos. Defendants approached the cell and requested that plaintiff and his cellmate comply with orders and come out of their cell. When they did not answer, they were told that force would be used and pepper spray.[4] They were informed that if they intended to barricade themselves, a barricade removal device would be used. They were repeatedly given the opportunity to voluntarily be handcuffed and exit the cell, but declined. At one point it appeared that plaintiff and his cellmate were going to comply with the orders to be handcuffed and exit the cell, but they chose not to. The guards opened up the small food try slot to drop the pepper spray grenade and plaintiff and his cellmate actively attempted with their hands to stop the guards' actions and not allow the pepper spray grenade to be put in the cell.[5] After two pepper spray grenades were activated, plaintiff and his cellmate complied with the defendants' orders and allowed themselves to be handcuffed without incident or any force

---

[3] Plaintiff does not specifically deny that his windows were covered earlier. Plaintiff states that while some guards reported the windows covered, not all the guards did at different shifts. Though, defendants state that the windows were covered only at various times during the day.

[4] A guard read warnings from a pre-printed sheet.

[5] Plaintiff states he put his hands out to be handcuffed, not to stop the pepper spray grenade from being placed in the cell. Opposition at 4. This statement is contradicted by the video which demonstrates that plaintiff did not agree to be handcuffed in the beginning and was obviously attempting to stop the defendants from placing the pepper spray grenade in the cell.

3

being required.

Plaintiff was immediately escorted to another area where he was provided water and an opportunity to shower and decontaminate from the pepper spray. Plaintiff does not appear in any type of distress from the pepper spray. He was briefly looked over by a nurse and asked some questions. Plaintiff stated he did not want to be decontaminated and only needed a drink of water. Plaintiff makes no reference to a chipped tooth or any other injuries.

### ii.    Retaliation

Defendant Reamer was assigned to the Administrative Segregation Property Room during the relevant time. Decl. Reamer ¶ 3. Property restrictions are placed on inmates in Administrative Segregation. *Id.* Property not kept in an inmate's cell must be stored in the property room. On January 10, 2011, defendant Reamer completed a confiscated item receipt for plaintiff's television because it had been improperly altered. *Id.* ¶ 4.[6] A hole had been cut in the television's housing and covered with tape. *Id.* Prison regulations allow prisoners to possess certain appliances as long as the appliances are sealed. *Id.* The regulations prevent inmates from using internal parts to manufacture weapons or conceal contraband. *Id.*

Plaintiff alleges that on January 10, 2011, defendants Guerra, Tran and Gutierrez searched his cell and several inmate witness declarations regarding the December 27, 2010, cell extraction were removed. Am. Compl. at 5; Oppositon at 18-19. However, plaintiff included several inmate witness declarations with his amended complaint that were signed and dated prior to January 10, 2011. Am. Compl. at 10-13.[7] Plaintiff also submitted a grievance regarding the cell extraction on January 8, 2011, that was processed on

---

[6] It does not appear that the television was removed from plaintiff's cell, rather it was already being stored in the property room.

[7] Two of the declarations state that plaintiff and his cellmate appeared as they had been badly beaten during the incident. Am. Compl. at 12-13. These declarations are contradicted by the video of the cell extraction and the aftermath where plaintiff and his cellmate appear uninjured.

4

January 12, 2011. *Id.* at 28.

**C.     Analysis**

    **i.     Excessive Force Standard**

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton, *id.* (citing *Wilson*, 501 U.S. at 297); *LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993).

What is required to establish an unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). When prison officials stand accused of using excessive force in violation of the Eighth Amendment, the deliberate indifference standard is inappropriate. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Instead, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Id.* at 6-7; *Whitley*, 475 U.S. at 320-21; *Jeffers v. Gomez*, 267 F.3d 895, 912-13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot, but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot).

In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the

5

amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *LeMaire*, 12 F.3d at 1454.

A significant injury is not a threshold requirement for stating an excessive force claim. *Hudson*, 503 U.S. at 7. Whether the alleged wrongdoing is objectively harmful enough to establish a constitutional violation is contextual and responsive to contemporary standards of decency. *Id.* at 8 (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). This is not to say that the "absence of serious injury" is not relevant to the Eighth Amendment inquiry. *Hudson*, 503 U.S. at 7. The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could possibly have been thought necessary in a particular situation. *Id*. The extent of injury may also provide some indication of the amount of force applied. *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010). But not every malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503 U.S. at 9. The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. *Id.* An inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim. *Id.*

        **a.**    **Discussion**

After reviewing the parties' briefing and the videos of the cell extraction it is evident there was no Eighth Amendment violation. There is no evidence that defendants used force maliciously and sadistically to cause harm and plaintiff was not complying with instructions and had previously been noncompliant with prison rules. It is undisputed that plaintiff was given several opportunities to be handcuffed and peacefully leave his cell. Plaintiff refused to cooperate. Plaintiff was told that if he did not cooperate force would be used including pepper spray. Plaintiff still did not cooperate. After plaintiff was informed of what would occur, the slot to his cell was open and pepper spray grenades were thrown into the cell. Despite plaintiff's statements to the contrary, it is abundantly clear that plaintiff

was not cooperating and allowing himself to be handcuffed rather he was trying to block the pepper spray grenades from being placed in his cell. The force used by defendants was rather small and mostly involved the use of pepper spray and the barricade remover when plaintiff and his cellmate attempted to obstruct defendants.

Plaintiff only suffered minor injuries, while not determinative this further demonstrates the lack of an Eighth Amendment violation especially in light of the minor force used and the many opportunities plaintiff was provided to comply with orders. Plaintiff was provided an opportunity to decontaminate from the pepper spray but declined. Plaintiff alleges that one of the grenades bounced off the ground and hit him in the mouth injuring his tooth. This allegation cannot be definitively supported or refuted by the video recordings. Even assuming it was true, plaintiff does not mention his tooth after the extraction while being looked over by a nurse and provided water. If a pepper grenade did bounce off the floor and hit him in the mouth, it was not malicious and sadistic but rather an accident and not a constitutional violation. The video shows the pepper grenades were thrown on the ground and not intentionally at plaintiff's face.

Plaintiff's attempt to show a genuine issue of material fact by stating that the video shows he was complying with defendants' commands also fails as this assertion is clearly refuted by the video evidence. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (police officer entitled to summary judgment based on qualified immunity in light of video evidence capturing plaintiff's reckless driving in attempting to evade capture which utterly discredits plaintiff's claim that there was little or no actual threat to innocent bystanders).

Plaintiff also argues that because defendants covered the outside windows of nearby cells during the extraction, summary judgment should be denied as this undermines defendants' argument that the inside of cells need to be visible. It is undisputed that the other windows were covered so nearby inmates could not observe the cell extraction and

7

manipulate inmates or staff with their observations.  There is no indication that the coverings were permanent rather it was just one or two cells and it appeared to be paper taped on the window.  As described above, other inmates whose windows were not covered submitted declarations about the incident that are contradicted by the video evidence.

While plaintiff's prior refusal to follow prison rules was not a severe threat, it is reasonable for prison officials to need to be able to see inside a cell for both cellmates safety as well as the safety of prison staff.  Defendants were justified in needing to enter the cell to remove the papers being used to block the windows.  With their response defendants used only a small amount of force to maintain discipline, there was only a minor injury and defendants made numerous efforts to temper the severity of their response, but plaintiff refused to cooperate and actively tried to disrupt defendants.  For all these reasons plaintiff has not shown the deprivation of an actual constitutional right.

### ii. Retaliation Standard

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

A prisoner must at least allege that he suffered harm, since harm that is more than minimal will almost always have a chilling effect. *Rhodes*, 408 F.3d at 567-68 n.11; *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) (holding that a retaliation claim is not actionable unless there is an allegation of harm).  The prisoner need not demonstrate a total chilling of his First Amendment rights in order to establish a retaliation claim.  *See Rhodes*, 408 F.3d at 568-69.  That a prisoner's First Amendment rights were chilled, though not necessarily silenced, is enough.  *Id.* at 569.

The prisoner must show that the type of activity he was engaged in was

constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997). Retaliatory motive may be shown by the timing of the allegedly-retaliatory act and inconsistency with previous actions, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003).

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* (quoting *Sandin*, 515 U.S. at 482).

### a. Discussion

The only allegations against defendant Reamer are that a couple of weeks after the cell extraction plaintiff's television that had been stored in the property room was confiscated because it had been altered. There are no allegations that Reamer's actions were somehow connected to the cell extraction or she was even aware of the incident or an inmate appeal following the incident. Plaintiff alleges that Reamer stated that she heard plaintiff likes to write up correctional officers. Yet, plaintiff's inmate appeal regarding the cell extraction was received by prison officials on January 12, 2011, while the television was confiscated two days earlier on January 10, 2011. Am. Compl. at 28. Plaintiff has failed to show any casual connection between the two events. Plaintiff states that he filed an inmate appeal after the television was confiscated which demonstrates retaliation. This argument fails as the television was confiscated before plaintiff filed the appeal. Plaintiff's conclusion that Reamer's actions were retaliatory are insufficient. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (conclusory allegations insufficient to defeat summary judgment). Of course not permitting an inmate to have an appliance that could hide

contraband or have a part that could be used to make a weapon reasonably advances a legitimate correctional goal and plaintiff has failed to show the confiscation of the television was due to any protected conduct.

Plaintiff alleges that on January 10, 2011, defendants Guerra, Tran and Gutierrez searched his cell and several inmate witness declarations regarding the cell extraction were removed. Plaintiff argues this was in retaliation for filing an inmate appeal. As noted above, plaintiff's appeal regarding the cell extraction was not received by prison officials until January 12, 2011, so it does not appear defendants were aware of the appeal. Even if they were aware of the appeal and removed the declarations, plaintiff already had an opportunity to submit the declarations as he wrote the appeal on January 8, 2011. Am. Compl. at 28. Plaintiff also included several inmates witness declarations with his amended complaint to this court that were signed and dated prior to January 10, 2011, so there does not appear to be any harm that can support retaliation. Plaintiff states that while he submitted some witness declarations, he was not able to include others, but plaintiff does not provide any information about these other declarations. Opposition at 19. It is not clear how the witness declarations could have been helpful to plaintiff and how their absence harmed his case. No one was able to witness the extraction as it occurred in the cell away from their view and the declarations that were provided describe visible injuries to plaintiff that are contradicted by the video evidence of the incident.

Plaintiff also alleges that the cell extraction was in retaliation because he complained about the lack of showers earlier in the day. This conclusory allegation with no other support is insufficient to overcome defendants' motion for summary judgment and the great deal of evidence regarding plaintiff covering his cell windows. Nor does plaintiff describe any protected conduct. Plaintiff has failed to show that any defendants retaliated against him.

### D.    Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or

10

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A court considering a claim of qualified immunity must determine (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009) (overruling requirement in *Saucier v. Katz*, 533 U.S. 194 (2001), that court ruling on qualified immunity claim consider first prong of test before addressing second prong).  The court may exercise its discretion in deciding which prong to address first.  *Id.*

As set forth above, plaintiff has failed to demonstrate the deprivation of an actual constitutional right for any of his claims.  With respect to the excessive force claim, defendants used a minor amount of force after repeatedly providing plaintiff an opportunity to comply with their orders and there was only a minor injury.  Plaintiff has also failed to show that any defendants took adverse action against him because of protected conduct.  Therefore, defendants are entitled to qualified immunity.

## CONCLUSION

1. The motion for summary judgment (Docket No. 31) is **GRANTED**.

2. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 16, 2013.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\CR.11\Gaddy5568.msj.wpd